AETNA INSURANCE COMPANY *v*. OWENS.

5-626                                        276 S. W. 2d 427

Opinion delivered March 21, 1955.

*Fitton & Adams,* for appellant.

*H. G. Leathers,* for appellee.

ED. F. McFADDIN, Justice. Appellee Owens, as a policy-holder, brought this action against Aetna Insur-

ance Company for $200.00 for the loss of a television aerial which appellee claimed was destroyed by a windstorm. Appellant denied liability, claiming (a) that there was no windstorm, and (b) that the loss was not occasioned solely by reason of a windstorm, but because of ice and snow—hazards not covered by the insurance policy. Trial to a Jury resulted in a verdict and judgment for appellee for $183.76; and appellant brings this appeal, urging the contentions now to be discussed.

I. *Windstorm.* The policy issued by appellant to appellee had what is designated as "extended coverage," in that it said: ". . . the coverage of this policy is extended to include direct loss by windstorm, . . ." At the conclusion of all of the evidence, appellant moved for an instructed verdict, saying:

". . . plaintiff has failed to meet the burden placed upon him to show that his television aerial was damaged by windstorm, and plaintiff has failed to make a case showing that a windstorm occurred in Berryville, Arkansas, on January 16, 1954."

The Trial Court was correct in denying the motion for an instructed verdict. There was ample evidence on which the Jury could base its verdict that a windstorm on the night of January 16th was the direct cause of the destruction of appellee's television aerial. Appellee testified:

". . . during the night the wind seemed to get stronger. The next morning when I got up my antenna was torn all to pieces on top of my house. There was a gust of wind out of the North and blew my antenna South . . .

"Q. Now you say that there was a wind all night. How do you know?

"A. Because I was awake several times during the night, due to the fact there was a wind blowing. That's what woke me up.

"Q. The wind whistling woke you up several times during the night?

"A. Yes, sir."

A neighbor, who likewise lost a television aerial the same night, testified that the wind blew hard. Another neighbor, who lived two blocks from the appellee, testified that the wind blew hard that night in "gushes." He testified to the noise that the wind made on the support wires of his aerial. At least four other witnesses testified as to the strong wind, the noise that it made, and the damage that it did.

After the Court refused appellant's motion for an instructed verdict, the appellant requested, and the Court gave, appellant's Instruction No. 2, which was in part:

"The word windstorm, as used in the insurance contract sued upon, takes its meaning from tornado or hurricane and indicates wind of unusual violence. A windstorm need not have either the cyclonic or whirling feature, which usually accompanies tornadoes or cyclones, but it must assume the aspects of a storm. That is, an outburst of tumultuous force. Therefore, you are instructed that the burden is on the plaintiff to show to your satisfaction by a preponderance of the evidence that a windstorm, as herein defined, did occur in Berryville on the night of January 16, 1954, and that the destruction of the television aerial was due solely to said windstorm, . . ."

We need not decide whether this instruction was too favorable to the appellant, because that issue is not argued by the appellee. Certainly the instruction is as favorable as the appellant desired to word it.[1]

II. *The Insurance Coverage.* The policy sued on by the appellee provided:

---

[1] For general statements on windstorm insurance coverage see Annotations in 126 A. L. R. 707, and 166 A. L. R. 380. See also the text in 29 Am. Jur. 792, and this statement in § 1052 of the Cumulative Supplement: "In the absence of a definition or limitation in the insurance policy, a windstorm must be taken to be a wind of sufficient violence to be capable of damaging the insured property. . . ."

"This Company shall not be liable for loss caused directly or indirectly by (a) frost or cold weather, or (b) snowstorm, tidal wave, high water or overflow, whether driven by wind or not."

At the conclusion of all the evidence, appellant moved for an instructed verdict, saying:

"Proof shows that the television aerial was damaged as a result of the combined effects of wind and cold weather, snow and ice, and there is no proof of the damage due to wind alone or to the cold weather, snow and ice alone; hence, any verdict of the Jury will be based on conjecture and speculation."

The Court was correct in refusing the motion. There was evidence of some ice, but there was also evidence that the amount of ice was negligible. Whether the loss of the television aerial was due solely to the windstorm was a question for the Jury to decide on the conflicting evidence. When the motion for instructed verdict was refused, the appellant requested, and the Court gave, an instruction which told the Jury:

"The burden of proof is on the plaintiff to show, by preponderance of the evidence, that the damage to the television aerial was occasioned by one of the causes insured against in the policy upon which he brings suit. In other words, an insurance policy is a contract between the policyholder and the company and the things set out in that agreement are covered and nothing else. The proper construction of the policy precludes the plaintiff from recovery if damage to his television aerial was due directly or indirectly by reason of cold weather, snow storm or ice, irrespective of whether the destruction of the television aerial was caused by windstorm or not. Therefore, if you find . . . that cold weather, snow or ice, directly or indirectly, contributed to the destruction of the television aerial, your verdict will be for the defendant."

This instruction submitted the issue to the Jury; and its verdict settles the conflict in the evidence.

.III. *Other Assignments.* In its brief in this Court, the appellant argues two other assignments: (a) that the verdict was based on conjecture and speculation instead of evidence; and (b) that the verdict was based on passion and prejudice, due to the fact that the defendant was an 'insurance corporation. We find no merit in either of these assignments. There was ample evidence to take the case to the Jury, and no passion or prejudice is shown.

Affirmed.